UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JESSICA HOUSTON,                )
                                )
            Plaintiff           )
                                )
     vs.                        )     CAUSE NO. 3:05-CV-452 RM
                                )
SAINT JOSEPH REGIONAL           )
MEDICAL CENTER, INC.,           )
                                )
            Defendant           )

OPINION and ORDER

This cause is before the court on the motion for summary judgment of St. Joseph's Regional Medical Center's motions for summary judgment and to strike the affidavit of Jessica Houston, filed by Ms. Houston in support of her summary judgment response. For the reasons that follow, the court denies the Hospital's motion to strike and grants its summary judgment motion.

FACTS

The Hospital argues that Ms. Houston's summary judgment response doesn't comply with Rule 56.1 of the Local Rules of the United States District Court for the Northern District of Indiana, which provides that a party opposing summary judgment shall serve and file a response

> that shall include in its text or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue

> necessary to be litigated. . . . In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion . . . .

L.R. 56.1(a), (b).

Ms. Houston's response doesn't contain the "Statement of Genuine Issues" required by L.R. 56.1. An examination of the record, however, convinces the court that the parties' versions of the facts and issues are sufficient so as to allow a ruling on the summary judgment motion, and Ms. Houston shouldn't be punished for any shortcomings in counsel's drafting of her response brief.

Jessica Houston became employed with the Hospital on April 19, 2004 as an assistant scheduler in the Surgery Department. Ms. Houston was hired as a PRN employee, defined by the Hospital as a "contingent or causal" employee who "is not guaranteed a regular schedule and may be called in to work for various hours per pay period according to staffing needs and employee availability." Because Ms. Houston was a college student, she job-shared a half-time position with Mikisha Williams, a fellow college student and PRN employee; Carmen Sanchez, a regular, part-time employee, filled the other half of the surgery scheduler position.

When Ms. Houston was hired, Connie Nichols was the Acting Director of Surgical Services at the Hospital. Pam Goddard became the Senior Director of Surgical Services two months later. Ms. Goddard had worked at the Hospital since

2

1981 in various capacities and as the Surgical Services Director was responsible for approximately 240 Hospital employees.

Sometime in late July or early August, Ms. Houston contacted Connie Nichols about an incident with another employee. Ms. Houston told Ms. Nichols that while she was in the employee lounge, Dale Carl entered the lounge and upon finding no empty chairs proceeded to sit in Ms. Houston's lap and whisper a comment about her appearance into her ear. Ms. Nichols took Ms. Houston to meet with Ms. Goddard about the incident.

Ms. Houston repeated her complaint about Mr. Carl to Ms. Goddard, and Ms. Goddard responded that Ms. Houston needed to file a formal complaint with the Human Resources Department. Ms. Houston said she didn't want to file a formal complaint or cause trouble for Mr. Carl, but, instead, wanted Ms. Goddard to talk to Mr. Carl about the incident. According to Ms. Houston, Ms. Goddard refused to take any action unless Ms. Houston filed a formal complaint against Mr. Carl. Ms. Houston says based on Ms. Goddard's response she felt forced into revealing that in the past she had been the victim of a sexual assault and, so found Mr. Carl's behavior particularly upsetting. Ms. Goddard then agreed to talk to Mr. Carl and did so that afternoon. No further incidents occurred between Ms. Houston and Mr. Carl.

On September 17, Ms. Houston contacted Robert Wade, the Hospital's General Counsel and Organizational Integrity Officer, about the incident with Mr. Carl and her meeting with Ms. Goddard. Ms. Houston complained to Mr. Wade

3

that Ms. Goddard told her no action could be taken on her complaint about Mr. Carl until she filed a formal charge; Ms. Houston also related that she was upset about having had to tell Ms. Goddard about her prior sexual assault. Ms. Houston told Mr. Wade there had been no further incidents with Mr. Carl. Ms. Houston says Mr. Wade told her he would look into the matter and get back to her.

The following week, Ms. Houston met twice with Ms. Goddard to discuss her concerns about Ms. Goddard's handling of her complaint about Mr. Carl. According to Ms. Houston, at the first meeting, Ms. Goddard immediately questioned her about her decision to contact the Integrity officer, using a tone Ms. Houston found to be offensive. Ms. Houston had to leave to go to class shortly after that meeting began, but she returned to the Hospital later that day and met with Ms. Goddard again. Ms. Nichols also was present at the second meeting. Ms. Houston says she secretly tape-recorded the meeting because she didn't have a witness of her own with her, and later transcribed the tape with the aid of her attorney's secretary. Ms. Houston maintains Ms. Goddard's tone was hostile while they discussed Ms. Houston's belief that she had to reveal too much information to get Ms. Goddard to take her complaint about Mr. Carl seriously. Ms. Houston says by the end of the meeting neither she nor Ms. Goddard "would budge from their positions."

When Ms. Houston didn't hear from Mr. Wade, she wrote a letter, dated September 26 and addressed "To Whom It May Concern," in which she related the events of her complaint to Ms. Nichols, Ms. Goddard, and Mr. Wade and her

4

dissatisfaction with their handling of the matter. She stated that more "life skills of integrity and caring should have been involved," and complained that "[i]t took an excessive amount of time and having to be spoken to in non-professional derogatory ways from [Ms. Goddard] to problem solve and focus on the initial complaint. There were way too many splinter conversations. Professionalism and integrity should be modeled by all employees and I do not feel like it was handled this way by [Ms. Goddard] or the Integrity office." Ms. Houston added that she had just learned that her assistant scheduler position was being reclassified for a part-time employee and her job had been posted on the Hospital's job listings with no prior notice from Ms. Goddard. Ms. Houston concluded that she felt Ms. Goddard "is doing this in retaliation for me turning her in." Ms. Houston forwarded her letter to Mr. Wade, Ms. Goddard, and Ms. Nichols.

Ms. Houston didn't apply for the part-time Surgery Services position. On October 20, 2004, Mikisha Williams became a part-time employee and took over the position. Ms. Sanchez remained as the other part-time person for that position. Ms. Houston remained as a PRN employee with the Hospital until April 2005 when she was notified that she was no longer qualified for employment with the Hospital and her employment was terminated.

Ms. Houston filed a complaint with the Equal Employment Opportunity Commission and after receiving her right to sue letter filed suit in this court. Ms. Houston claims the Hospital retaliated against her by eliminating her job position because she complained about actions of Mr. Carl and Ms. Goddard.

5

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in her favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

MOTION TO STRIKE

The Hospital has moved to strike Ms. Houston's affidavit, filed in support of her summary judgment response, because the affidavit contains Ms. Houston's electronic, rather than written, signature. In response, Ms. Houston submitted a copy of her affidavit containing her actual signature, with the explanation that she believed an electronic signature was sufficient and her counsel had retained her original signed affidavit. Because Ms. Houston cured the deficiency in her affidavit with no prejudice to the Hospital, the court denies the motion to strike.

DISCUSSION

Ms. Houston claims she was the victim of retaliation after she complained about a co-worker's sexually harassing actions. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." Thus, Title VII "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits." Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).

To prevail, Ms. Houston may proceed under the direct method by presenting evidence of statutorily protected activity, an adverse employment action, and a causal connection between the two. Haywood v. Lucent Tech., Inc., 323 F.3d 524, 531 (7th Cir. 2003). If Ms. Houston's evidence is contradicted, a trial must be held

unless the Hospital presents unrebutted evidence "that it would have taken the same action against [Ms. Houston] anyway, 'in which event the [Hospital's] retaliatory motive, even if unchallenged, was not a but-for cause of [Ms. Houston's] harm.'" Haywood v. Lucent Tech., 323 F.3d at 531 (*quoting* Stone v. City of Indianapolis Pub. Utilities Div., 281 F.3d 640, 642 (7th Cir. 2002)).

Alternatively, Ms. Houston may proceed under the indirect method by showing that "after [s]he complained of discrimination, [s]he, and not any other similarly situated employee who did not complain, was subject to an adverse action although [s]he was performing up to the employer's legitimate job expectations." Roney v. Illinois Dept. of Transp., 474 F.3d 455, 459 (7th Cir. 2007). If Ms. Houston meets her burden, "the burden of production shifts to the defendant to come forward with a legitimate, non-invidious reason for the adverse employment action. Although the burden of production shifts to the defendant under this method, the burden of persuasion rests at all times on [Ms. Houston]." Haywood v. Lucent Tech., Inc., 323 F.3d at 531.

The Hospital argues it is entitled to summary judgment on Ms. Houston's claims because she can't establish a prima facie case of retaliation. The Hospital says Ms. Houston can't demonstrate she engaged in protected activity or that a similarly-situated employee who didn't complain was treated more favorably. Alternatively, the Hospital says it has a legitimate, non-discriminatory reason for its actions relating to Ms. Houston's employment. In response, Ms. Houston asserts she can establish a prima facie case of retaliation under the direct method:

8

she says she engaged in statutorily protected expression, she suffered an adverse employment action, and there was a causal link between the protected expression and the adverse action.

*Retaliation Via the Direct Method of Proof*

Ms. Houston says her complaint to Ms. Goddard about inappropriate conduct by Carl Dale qualifies as protected activity under the first prong of her prima facie showing. Ms. Houston complained to Ms. Goddard when Mr. Carl sat in her lap and whispered in her ear. The Hospital argues that Ms. Houston didn't engage in statutorily protected expression based on her complaint to Mr. Wade about her dissatisfaction with Ms. Goddard's handling of her complaint about Mr. Carl. Even though the Hospital is correct that Ms. Houston's complaint to Mr. Wade about Ms. Goddard can't be seen as a complaint about sexual harassment or discrimination, Ms. Houston's complaint about inappropriate touching by Mr. Carl clearly falls within Title VII protection.

The parties don't dispute that Ms. Houston suffered an adverse employment action as required by the second prong of a prima facie case. Ms. Houston was notified in April 2005 that because she hadn't maintained the minimum number of work hours as a PRN employee ("eight hours or its annual equivalent"), she was no longer qualified for employment with the Hospital and her employment was terminated.

9

Under the third prong of her prima facie case, Mr. Houston claims there is "substantial evidence" of a causal link between her complaint about a co-worker and the loss of her employment. Ms. Houston first says Ms. Goddard restructured her surgical scheduling position shortly after she complained about the inappropriate actions of Mr. Carl. Ms. Houston, however, hasn't cited or pointed to any evidence in the record to support her statement in this regard. *See* Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1001 (7th Cir. 2004) (where a party fails to cite the record, court "will not root through the . . . documents . . . that make up the record here to make his case for [her]"); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996) ("It is not [the court's] function to scour the record in search of evidence to defeat a motion for summary judgment.").

The Hospital says in reply that even though the position wasn't restructured until October, the decision to restructure the position was made months before Ms. Houston complained about Mr. Carl, as evidenced by Ms. Goddard's own explanation about her decision-making process:

> Within approximately the first week after I assumed responsibility for the Surgical Services Department, I became aware that two PRN employees (Ms. [Houston] and Mikisha Williams) were together filling a regular, part-time position. . . . In my 23 years working for [the Hospital], I was familiar with PRN employees and the role they play at [the Hospital]. I felt the situation I inherited (two PRN employees filling a regular, part-time position) would need to be addressed because PRN employees are not expected to keep regular hours and, under [the Hospital's] policies, cannot be held to a certain schedule. Using two PRN employees also was not consistent with the Surgical Services Department budget, which included the position as

10

> a regular position, with benefits. For these reasons, I felt that the use of PRN employees (casual employees not eligible for benefits) to fill a regular position did not reflect good business practices. In my 23 years with [the Hospital], I had never used PRN employees to fill regular hours. . . . When I learned that PRN employees were working regular hours, I determined that the situation would not continue. After dealing with the most critical issues facing the Surgical Services Department through the summer of 2004, I turned my attention to correcting the use of PRN employees in a regular position in the fall of 2004.

Goddard Dec., ¶¶ 7-10.

The Hospital also cites to Mr. Wade's deposition testimony that his understanding of Ms. Goddard's decision to restructure the surgical scheduling position was that Ms. Goddard "identified rather quickly that the two PRN positions [were] not fitting her business needs and she needed more stability with respect to the schedule and that that predated . . . the September 17th phone call between [Ms. Houston] and me. Because it predated that, it was my conclusion that then there – in no way was the report to my office a retaliatory. [Ms. Goddard] was just completing what her business objective was when she first took over the department." Wade Dep., at 63.

Ms. Houston hasn't challenged Ms. Goddard's statement that she made her decision to restructure the Surgical Services position in June 2004, almost two months before Ms. Houston complained to Ms. Goddard about Mr. Carl and three months before Ms. Houston complained about Ms. Goddard to Mr. Wade, nor has Ms. Houston challenged Mr. Wade's statement about his understanding of the timing of Ms. Goddard's decision. Ms. Houston hasn't provided support for any

11

inference she is attempting to raise relating to the timing of the restructuring decision, and her speculation about that decision is insufficient to support a retaliation claim. *See* Flannery v. Recording Industry Ass'n of America, 354 F.3d 632, 643 (7th Cir. 2004) ("retaliation claims must be based on facts, and not on speculative theories"); Carter v. American Oil Co., 139 F.3d 1158, 1163 (7th Cir. 1998) (in considering a summary judgment motion, the court is not obligated "to assume the truth of a nonmovant's conclusory allegations on faith").

Ms. Houston next asserts as evidence of a causal link between her complaint and the loss of her employment inconsistent statements made by Ms. Goddard concerning Ms. Houston's ability to work for the Hospital after the restructuring of her job. Ms. Houston says that even though she was unable to bid on the new position, Ms. Goddard still considered her to be a PRN but never called her again to work and told Ms. Sanchez and Ms. Williams to not call her. Ms. Houston says payroll records demonstrate there were many opportunities for her to have worked.

The Hospital counters Ms. Houston's claim by setting forth Ms. Goddard's statements about her management practices relating to PRN employees and Ms. Houston's PRN status specifically:

> [I]t has been my regular practice since I began in management at [the Hospital] (in 1988) to cover absences or open hours with regular employees (without incurring overtime hours), and to turn to PRN employees only if regular employees are not available. . . . Ms. [Houston] remained a PRN employee after Ms. Williams began in the regular position, though [the Hospital] did not call her to work, as regular employees were willing and able to fill open hours.

12

Goddard Dec., ¶¶14, 17.

Ms. Houston hasn't challenged, or pointed to evidence to refute, Ms. Goddard's statement that Ms. Houston wasn't called because other non-PRN employees were available to fill-in when needed. And while Ms. Houston says payroll records show there were opportunities for her to have worked, she offers no citations or information about which payroll records support her claim in this regard. Ms. Houston's general reference to unidentified "payroll records," Resp., at 18, doesn't constitute evidence sufficient to demonstrate an inconsistent statement by Ms. Goddard.

Ms. Houston lastly notes that Ms. Goddard indicated on the termination form that Ms. Houston was not eligible for rehire and testified that Ms. Houston had a "rude attitude." Ms. Houston then asks: "If [Ms.] Goddard believed [Ms. Houston] had a rude attitude as of April 26, 2005, even though [Ms. Houston] had not worked the previous six months, then why would [Ms.] Goddard have told [Ms. Houston] on her last day of work in October [2004] that she was still in a PRN status?" [Resp., at 18.] The court has no obligation to search Ms. Houston's submissions for evidence or arguments that might be relevant to answering her question. Ms. Houston must identify "with reasonable particularity the evidence that precludes summary judgment," but she hasn't done so. Brasic v. Heinemann's, Inc., 121 F.3d 281, 285 (7th Cir. 1997); *see also* Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) (the court "will not scour a record to locate evidence supporting a party's legal argument").

13

"Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions." Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000). Ms. Houston hasn't cited to facts sufficient to tie the loss of her employment to her protected activity. "A case of discrimination can . . . be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: 'a number of weak proofs can add up to a strong proof.'" Sylvester v. SOS Children's Villages Illinois, Inc., 453 F.3d 900, 903 (7th Cir. 2006) (*quoting* Mataya v. Kingston, 371 F.3d 353, 358 (7th Cir. 2004)). Ms. Houston hasn't cited direct evidence or evidence sufficient to create a "convincing mosaic of circumstantial evidence" that would establish a prima facie case of retaliation.

*Retaliation Via the Indirect Method of Proof*

The Hospital argues that Ms. Houston can't establish a prima facie case of retaliation under the indirect method of proof because she didn't engage in protected activity and can't demonstrate that a similarly-situated employee who didn't complain was treated more favorably. While the court has determined that Ms. Houston engaged in protected activity, Ms. Houston hasn't challenged or addressed the Hospital's claim that no similarly-situated, non-complaining

14

employee was treated more favorably. The Hospital has also set forth a legitimate and non-discriminatory reason for its termination of Ms. Houston's employment: Ms. Goddard restructured the surgical scheduling position based on Hospital policy and her business practices, and Ms. Houston wasn't contacted thereafter to work in that department because Ms. Goddard didn't resort to using PRN employees such as Ms. Houston as fill-ins. Ms. Houston hasn't challenged or addressed the Hospital's proffered reason or produced any evidence to show that the Hospital's reason for its decision in this regard was a lie or had no basis in fact. Mills v. Health Care Serv. Corp., 171 F.3d 450, 458 (7th Cir. 1999). The Hospital is entitled to summary judgment on her retaliation claim.

CONCLUSION

Ms. Houston hasn't carried her burden and can't prevail on her retaliation claim: she hasn't established a prima facie case of retaliation via the direct or indirect method of proof and she hasn't demonstrated that the Hospital's reason for its termination of her employment was a pretext for discrimination. Therefore, the court DENIES the motion to strike [docket # 25], GRANTS the motion for summary judgment [docket # 24], VACATES the final pretrial conference set for May 14, 2007 and the trial date of May 22, 2007, and DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED:     April 24, 2007

           /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court