UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESSICA HOUSTON, | ) |
| Plaintiff | ) ) ) ) |
| vs. | ) CAUSE NO. 3:05-CV-452 RM ) |
| ST. JOSEPH REGIONAL MEDICAL CENTER, INC., | ) ) ) ) |
| Defendant | ) |

## OPINION and ORDER

On September 3, 2009, a jury returned a verdict for Jessica Houston on her claim of retaliation against St. Joseph Regional Medical Center. The jury concluded that the Hospital had retaliated against Ms. Houston by restructuring her job and listing her as not eligible for re-hire; they awarded her $50,000 in punitive damages. The parties stipulated that Ms. Houston's back pay damages amounted to $3,650, and judgment was entered for Ms. Houston in the sum of $53,650 on September 18, 2009. The parties are now before the court on the Hospital's renewed motion pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law and Ms. Houston's motions for attorneys' fees and costs. The motions will be addressed separately below.

## RULE 50(B) MOTION

A post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) requires the court to consider the totality of the evidence to determine whether the jury was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict, David v. Caterpillar, Inc., 324 F.3d 851, 858 (7th Cir. 2003), and whether any rational jury could have found for the plaintiff. Harvey v. Office of Banks & Real Estate, 377 F.3d 698, 707 (7th Cir. 2004); *see also* Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004) ("In ruling on a motion for new trial, federal law requires a district court to determine whether 'the verdict is against the weight of the evidence, . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the party moving.'" (*quoting* EEOC v. Century Broadcasting Corp., 957 F.2d 1446, 1460 (7th Cir. 1992)). The court must consider the totality of the evidence, without making credibility determinations or re-weighing the evidence, and view the evidence and all reasonable inferences in a light most favorable to the prevailing party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-151 (2000); Erickson v. Wisconsin Dep't of Corrections, 469 F.3d 600, 601 (7th Cir. 2006). A jury verdict may not be set aside "if a reasonable basis exists in the record to support the verdict." Kapelanski v. Johnson, 390 F.3d at 530.

The Hospital challenges the punitive damages award. Title VII authorizes an award of punitive damages if the plaintiff shows that her employer or its agent, *i.e.*, a person serving in a managerial capacity and acting within the scope of his

2

or her employment, engaged in discriminatory practices with malice or reckless indifference to the plaintiff's Title VII rights. 42 U.S.C. § 1981a(b)(1); Kolstad v. American Dental Ass'n, 527 U.S. 526, 545-546 (1999). "[A]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where [those] decisions are contrary to the employer's good-faith efforts to comply with Title VII." Kolstad v. ADA, 527 U.S. at 545. Thus, even if a plaintiff establishes that a managerial agent acted with knowledge that his or her actions may have violated federal law, the employer may avoid liability for punitive damages if it can show it engaged in good faith efforts to implement an anti-discrimination policy. Id.

The Hospital argues that Ms. Houston didn't carry her burden of demonstrating that any of its managerial employees acted with the requisite intent, that is, with malice or reckless indifference to Ms. Houston's rights under Title VII. The Hospital concedes that Pam Goddard, Robert Wade, and Virginia Chism were managers or supervisors acting within the scope of their employment and insists that they implemented its anti-retaliation policy promptly and in good faith when they learned of Ms. Houston's retaliation complaint. According to the Hospital, Mr. Wade began investigating immediately after receiving Ms. Houston's complaint – he reviewed the materials submitted to him by Ms. Houston, interviewed Ms. Goddard, spoke to Virginia Chism, the Hospital's Human Resources Director, contacted Ms. Houston to discuss the results of his investigation, and, finally, drafted a four-page memorandum setting forth his

3

findings and memorializing his conversation with Ms. Houston. These actions, the Hospital says, "are not the actions of an employer seeking to shirk its duties under Title VII." Deft. Memo., at 8.

The Hospital claims, too, that Ms. Houston didn't establish that Pam Goddard

> was even aware of the risk that [Ms.] Houston's complaints to her and the legal department about the handling of the Dale Carl incident were protected activity under Title VII. Given that the Hospital is aware of no other case in this circuit that applied the 'continuous complaint process' theory before the Seventh Circuit's opinion in this case, it is unclear how [Ms.] Goddard could reasonably have been expected to appreciate that those complaints could be protected under Title VII.

Deft. Memo., at 4-5. The court can't agree.

A plaintiff may establish that an employer acted with the requisite mental intent "by demonstrating that the relevant individuals knew of or were familiar with the antidiscrimination laws and the employer's policies for implementing those laws." Bruso v. United Airlines, Inc., 239 F.3d 848, 858 (7th Cir. 2001). Ample evidence was presented at trial showing that the Hospital had a written anti-discrimination and anti-retaliation policy that was publicized to its staff through signage, brochures, and employee training sessions. The Hospital employees involved in this case all testified that they were familiar with the policy, and the Hospital hasn't cited to evidence or testimony that would support a contrary conclusion. While an employer's anti-discrimination policy is relevant to whether the employer made a good faith attempt to comply with Title VII, such a

4

policy isn't sufficient "in and of itself to insulate an employer from a punitive damages award." Bruso v. United Airlines, 239 F.3d at 858.

The jury heard evidence that (1) Ms. Houston complained to Pam Goddard, her supervisor, about sexual harassment by a co-employee; (2) when Ms. Houston didn't hear back from Ms. Goddard, she complained to Robert Wade, the Hospital's integrity officer, about what she regarded as Ms. Goddard's mishandling of her harassment complaint; (3) Mr. Wade conducted an investigation of Ms. Houston's complaint, including interviewing Ms. Goddard; (4) Ms. Goddard then met with Ms. Houston to express her irritation that Ms. Houston had contacted Mr. Wade to report what Ms. Houston perceived as Ms. Goddard's poor handling of her harassment complaint; (5) less than a month later, Ms. Goddard restructured Ms. Houston's part-time job-sharing arrangement without notifying Ms. Houston; (6) Ms. Houston's college schedule prevented her from applying for the restructured position, but Ms. Goddard told her that she would be called back to work to fill-in when needed; (7) once employees were hired for the restructured position, Ms. Goddard told those employees to not call Ms. Houston to substitute or fill-in for them; (8) six months later, Ms. Goddard made the decision to submit a termination form for Ms. Houston and indicated on the form that Ms. Houston was "not eligible for re-hire" by the Hospital or its affiliates because, as Ms. Goddard testified at trial, she thought Ms. Houston was rude[1]; and (9) Ms.

---

[1] Ms. Goddard was asked at trial about the timing of her conclusion that Ms. Houston was rude. When asked, "And in point of time line, [Ms. Houston], in your mind, was not rude and didn't have a problem with authority until at least the first meeting or the second meeting when she's

5

Goddard didn't discuss her decision with the Human Resources Department before submitting the termination form and no one at the Hospital ever questioned or challenged the listing of Ms. Houston as "not eligible for re-hire." Viewing that evidence in the light most favorable to Ms. Houston, the jury could have reasonably concluded that Pam Goddard was familiar with the Hospital's anti-retaliation policy, was serving in a managerial capacity, and was acting within the scope of her employment at the Hospital when she engaged in discriminatory practices — *i.e.*, restructuring Ms. Houston's job and marking her as not eligible for rehire — that were retaliatory and in reckless indifference to Ms. Houston's Title VII rights, demonstrating a lack of good faith by the Hospital in implementing its anti-retaliation policy.[2]

---

complaining about Dale Carl, right? Prior to any complaints about Dale Carl, you did not view [Ms. Houston] as being rude or having problems with authority; is that correct?" Ms. Goddard responded, "Correct." Resp., Exh. D, at 29 [original 391]. Ms. Goddard testified she thought Ms. Houston was rude in October 2004 after Ms. Goddard posted notice of the restructuring of Ms. Houston's position. *See* Resp., Exh. D, at 23-24 [original 380-381]. And Ms. Goddard further testified that she concluded in December 2004 that Ms. Houston was rude and had trouble with authority when she (Ms. Goddard) said "hello" to Ms. Houston in the hall at the Hospital and Ms. Houston didn't respond. *See* Resp., Exh. D, at 24-25 [original 381-382].

[2] The jury also was instructed on the relevant law:

To succeed on her retaliation claim, Ms. Houston must prove by a preponderance of the evidence that the Hospital would not have restructured her job, or failed to call her into work, or terminated her employment while listing her as not eligible for rehire if she hadn't complained about what she saw as sexual harassment and everything else remained the same.

\* \* \*

Ms. Houston's complaint to Ms. Goddard about Mr. Carl's conduct is activity protected by employment discrimination law.

You must decide whether Ms. Houston's later complaint to Mr. Wade was part of a continuous complaint about Mr. Carl's conduct. If you so find, you should go on to decide whether the employment decisions Ms. Houston complains about would have happened had she not engaged in this continuous complaint and everything else had remained the same.

If you find that Ms. Houston's later complaint to Mr. Wade was another,

A review of the record in this case convinces the court that the jury "was presented with a legally sufficient amount of evidence from which it could reasonably derive its" punitive damage award. Massey v. Blue Cross-Blue Shield of Ill., 226 F.3d 922, 924 (7th Cir. 2000); *see also* Gentry v. Export Packaging Co., 238 F.3d 842, 851-852 (7th Cir. 2001) (upholding punitive damage award where upper management had "failed to address [their] attendant responsibility" under employer's anti-discrimination policy); Romano v. U-Haul Int'l, 233 F.3d 655, 669 (1st Cir. 2000) (finding punitive damage award proper where supervisor involved in plaintiff's firing was aware of employer's anti-discrimination policies); Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 443 (4th Cir. 2000) (upholding punitive

---

> unrelated grievance, you may not consider that later complaint to Mr. Wade as activity protected by federal employment discrimination law, and you may not consider it when you decide whether the employment decisions Ms. Houston complains about would have happened had she not complained to Ms. Goddard about Mr. Carl's conduct and everything else had remained the same.

Final Jury Instructions 11 and 12. The jury was instructed on the issue of punitive damages, as well:

> If you find for Ms. Houston, you may, but are not required to, assess punitive damages against the Hospital. The purpose of punitive damages is to punish a defendant for its conduct and to serve as an example or warning to the Hospital and others not to engage in similar conduct in the future.
> Ms. Houston must prove by a preponderance of the evidence that punitive damages should be assessed against the Hospital. You may assess punitive damages only if you find that the conduct of the Hospital's managerial employees was in reckless disregard of Ms. Houston's rights. An action is in reckless disregard of a person's rights if taken with knowledge that it may violate the law.
> Ms. Houston must prove by a preponderance of the evidence that the Hospital's managerial employees acted within the scope of their employment and in reckless disregard of her right not to be retaliated against.
> You should not, however, award Mr. Houston punitive damages if the Hospital proves that it made a good faith effort to implement an anti-retaliation policy. . . .

Final Jury Instruction 16. The court assumes, and no party has argued to the contrary, that the jury followed those instructions. *See* Opper v. United States, 348 U.S. 84, 95 (1954) ("Our theory of trial relies upon the ability of a jury to follow instructions."); Jones v. Lincoln Elec. Co., 188 F.3d 709, 732 (7th Cir. 1999) "we assume that the jury followed the court's cautionary instructions").

damage award where evidence showed manager who discriminated had attended educational seminar on federal anti-discrimination laws); EEOC v. Management Hospitality of Racine, Inc., 623 F. Supp. 2d 980, 987 (E.D. Wis. 2009) ("If [upper management employee] had ultimate responsibility for the policy but did not enforce it in good faith, then [employer] did not make good faith efforts to comply with Title VII."); EEOC v. Caterpillar, Inc., 503 F. Supp. 2d 995, 1048 (N.D. Ill. 2007) ("There is ample evidence that managerial employees were aware of the risk that they might violate federal law, as reflected in defendant's repeated and substantial efforts to train all employees on and publicize its harassment policies."). Because the Hospital hasn't shown that the punitive damage award was against the weight of the evidence, its renewed motion for judgment as a matter of law on the issue of punitive damages must be denied.

ATTORNEY FEE REQUEST

Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Farrar v. Hobby, 506 U.S. 103, 111 (1992) ("[T]o qualify as a prevailing party, . . . [t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought

8

or comparable relief through a consent decree or settlement." (citations omitted)). Based on the jury verdict and the parties' stipulation, Ms. Houston was awarded a $53,650 judgment against the Hospital; she is seeking fees in the total amount of $175,711.50. The Hospital doesn't challenge Ms. Houston's status as a prevailing party or her entitlement to an award of fees, but objects to portions of her fee request.

1.

As an initial matter, the Hospital maintains the plaintiff's fee request should be corrected based on the miscalculation of Mr. O'Leary's hours. In Mr. O'Leary's affidavit, he sets forth his hours spent in five different phases of representing Ms. Houston — before the EEOC; during discovery; at the summary judgment stage; on appeal; and at trial — and concludes that those hours total 286.3 when, in fact, the hours set forth total 269.8.

Ms. Houston hasn't challenged the Hospital's objection or its request that the fee request be reduced in this regard. The court has confirmed that the entries listed by Mr. O'Leary in his affidavit total 269.8 hours, not 286.3 as reported, and reduces the fee request accordingly.

2.

The Hospital next objects to Ms. Houston's request for fees for preparation by and attendance of two attorneys at her deposition. The Hospital says the billing

records support a conclusion that Mr. O'Leary was primarily responsible for the deposition, so Mr. DeBoni's $1,500 fee for his preparation and attendance at the deposition should be disallowed.

The case law supports the Hospital's position that Ms. Houston shouldn't recover for duplicative efforts of her counsel. While "[t]he attendance at trial by two attorneys, both of whom participated in the trial of the case, is not unreasonable . . . , it was duplicative and unnecessary for [Ms. Houston] to have more than one attorney attend a deposition." Mehringer v. Village of Bloomingdale, No. 00-C-7095, 2003 WL 21506856, at *12 (N.D. Ill. June 27, 2003); *see also* Jaffee v. Redmond, 855 F. Supp. 244, 246 (N.D. Ill. 1994) (disallowing claim for representation by more than one attorney at deposition); Rateree v. Rockett, 685 F. Supp. 670, 671 (N.D. Ill. 1988) (reducing fee request for "duplication of effort" based on "tandem involvement of plaintiffs' two lawyers in such things as deposition attendance"); Tincher v. Walmart, No. TH 93-175-C, 1996 WL 663879, at *2 (S.D. Ind. May 31, 1996) ("[T]he court must be conscientious in its review of the nature of the time spent to prevent duplication by lawyers, particularly in such things as deposition attendance, client conferences and general discussions.").

Ms. Houston hasn't challenged the Hospital's objection or presented any argument justifying her request for fees for two attorneys at her deposition. Mr. DeBoni's $1,500 charge on April 26, 2006 for "preparation for and attendance at" Ms. Houston's deposition is duplicative and will be disallowed.

3.

Lastly, the Hospital says portions of Mr. O'Leary's billing records are insufficient to support the amount of fees requested. The Hospital notes Mr. O'Leary's statement in his affidavit that he has no records evidencing the work he performed between November 10, 2004 and August 7, 2006; instead, his claim for thirty-six billable hours during that period is based on his review of his file, his calendar, and his co-counsel's time records. The Hospital says the reconstructed time entries provide too little information to allow a determination of whether the time spent was reasonable. The Hospital suggests that Mr. O'Leary's reported hours during the November 10, 2004 through August 7, 2006 time period be reduced by 20% to account for the vagueness and inherent accuracy problems associated with reconstructing his records. Ms. Houston hasn't responded to the Hospital's objection to the number of hours claimed or its suggested reduction to those hours.

The basic formula for computing a reasonable fee award is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, resulting in the lodestar figure. Gastineau v. Wright, 592 F.3d 747, 748 (7th Cir. 2010); Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999). The party seeking the fee award must "submit evidence supporting the hours worked and the rates claimed." Hensley v. Eckerhart, 461 U.S. at 433; *see also* Spegon, 175 F.3d at 550 ("The party seeking the fee award bears the burden

of demonstrating the reasonableness of the hours worked and the hourly rates claimed.").

The nearly four years Mr. O'Leary waited to record his time poses an obstacle to determining a reasonable fee. The process of recreating billing records by reviewing a file, an office calendar, and co-counsel's time records necessarily involves speculation. Given the inherent imprecision in re-creating those hours, the court agrees that Mr. O'Leary's hours from November 10, 2004 through August 7, 2006 should be reduced by 20%, from 36 to 28.8 hours, as the Hospital requests. *See* Hensley v. Eckerhart, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or . . . reduce the proposed fee by a reasonable percentage.").

After determining the number of hours "reasonably expended," the court must determine a "reasonable hourly rate," which is derived from the market rate for the services rendered. Hensley, 461 U.S. at 433. The "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." Spegon v. Catholic Bishop of Chicago, 175 F.3d at 555 (citations omitted). The fee applicant must "produce satisfactory evidence — in addition to the attorney's own affidavits — that the

requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). "The fee applicant can meet his initial burden 'either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.'" Batt v. Micro Warehouse, Inc., 241 F.3d 891, 894 (7th Cir. 2001) (*quoting* Spegon v. Catholic Bishop, 175 F.3d at 556).

Ms. Houston submits the affidavit of Patrick O'Leary, who states that his rate of $300 per hour is, "in [his] opinion," a reasonable rate "consistent with the customary rates charged by other attorneys in the Northern District of Indiana, including the rates charged by defense counsel having a [similar] level of skill and experience." O'Leary Aff., ¶ 7. Mr. O'Leary says that he has represented clients at trial and on appeal in personal injury and employment discrimination cases since 1983. O'Leary Aff., ¶¶ 2, 3. Ms. Houston also submits the affidavit of Michael DeBoni stating that the rates charged by Yoder, Ainlay, Ulmer, & Buckingham — $250 per hour by Mr. DeBoni, a partner with the firm; $180 per hour for work by associate attorneys; and $95 per hour for the firm's legal assistants — are usual and customary hourly rates for attorneys and legal assistants "of similar skill and experience practicing in Northern Indiana." DeBoni Aff., ¶¶ 9, 10, 11. Mr. DeBoni reports that he has concentrated his practice in the areas of civil rights and

13

employment law litigation since he joined the Yoder firm in 1985. DeBoni Aff., ¶ 6.

"[A] plaintiff's attorney [is required] to do more than merely request an hourly rate; he must present evidence to establish that the requested rate is his actual billing rate." People Who Care v. Rockford Bd. of Educ., School Dist. No. 205, 90 F.3d 1307, 1311 (7th Cir. 1996). "While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy plaintiffs' burden." Harper v. City of Chicago Heights, 223 F.3d 593, 604 (7th Cir. 2000). Messrs. O'Leary and DeBoni have offered no evidence to support their rates: no examples of rates billed to other clients, no evidence of fees awarded in similar cases, no information about their actual billing rates, and no affidavits of other local practitioners verifying the billing rates in the area. People Who Care, 90 F.3d at 1312.

The affidavits submitted by Ms. Houston are insufficient, but the Hospital's failure to contest the hourly rates saves her request. *See* Riddle v. National Sec. Agency, Inc., No. 05-C-5880, 2010 WL 1655443, at *4 (N.D. Ill. Apr. 23, 2010) ("Defendants' failure to provide evidence challenging the requested hourly rate is taken as a concession that the rate requested is reasonable."). With the exception of the hours re-created by Mr. O'Leary from November 10, 2004 through August 7, 2006, the hourly rates requested are consistent with prevailing market rates in the community for attorneys with similar skill and experience. *See* Firestine v.

Parkview Health Sys., Inc., 374 F. Supp. 2d 658, 662-663 (N.D. Ind. 2005) ($225 per hour rate approved); Pace v. Pottawattomie Country Club, Inc., No. 3:07-CV-347, 2009 WL 4843403, at *10 (N.D. Ind. Dec. 11, 2009) ($250 per hour); Hall v. Forest River, Inc., No. 3:04-CV-259, 2008 WL 1774216, at *2 n.2 (N.D. Ind. Apr. 15, 2008) ($320 per hour). Because Mr. O'Leary recreated his time records in reliance on his co-counsel's records, his hourly rate for that time period should mirror that of his co-counsel, as well. A rate of $250 per hour for Mr. O'Leary's re-created hours from November 10, 2004 through August 7, 2006 is reasonable.

In summary, Ms. Houston will be awarded attorney fees in the total amount of $165,661.50, summarized as follows:

```
Mr. O'Leary:
11-10-04 to 8-7-06     28.8 @ $250 =        $  7,200.00
8-23-06 to 9-28-09    233.8 @ $300 =          70,140.00
                      Total                 $ 77,340.00


Yoder firm:
Mr. DeBoni            234.9 @ $250 =        $ 58,725.00
Associate Attorneys    98.4 @ $180 =          17,712.00
Paralegals            125.1 @ $  95 =         11,884.50
                      Total                 $ 88,321.50
```

BILL OF COSTS

Federal Rule of Civil Procedure 54(d) creates a presumption that the prevailing party will be awarded her costs.[3] Even so, the court still must determine

---

[3] Ms. Houston filed her request for costs in 2009 when Federal Rule of Civil Procedure 54(d)(1) provided that costs "shall be awarded" to the prevailing party. Although the language of Rule 54(d)(1) was modified in 2010 to provide that costs "should be awarded costs" to the prevailing party, the deletion of the mandatory language from the rule has no material effect on Ms. Houston's motion. *See, e.g.,* Rivera v. City of Chicago, 469 F.3d 631, 634 (7th Cir. 2006) (Rule

whether the amounts sought are allowable cost items and are reasonable in amount and necessity to the litigation. Little v. Mitsubishi Motors North America, Inc., 514 F.3d 699, 702 (7th Cir. 2008); Gernaat v. Four Star Taxi, Inc., No. 2:07-CV-83, 2009 WL 2747952, at *1 (N.D. Ind. Aug. 25, 2009). A losing party arguing against an award of costs must make "an affirmative showing that taxed costs are not appropriate." Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 864 (7th Cir. 2005).

28 U.S.C. § 1920 sets forth the basic categories of allowable costs.[4] Ms. Houston seeks reimbursement for expenses in four of those categories — fees paid to the clerk of the court ($250), fees paid to court reporters for transcripts ($789.50), fees for witnesses ($343.71), and fees for copying ($1,213.30) — and has provided documentation for the costs falling in the first three categories. The Hospital objects to the lack of a breakdown or description of the copying expenses included in the fourth category. As the Hospital notes, Ms. Houston's bill of costs contains no information about the number of copies made, the price per page, or the purpose of the copies.

While Ms. Houston isn't required "'to submit a bill of costs containing a description so detailed as to make it impossible economically to recover

---

54(d)(1) interpreted as creating "a presumption that the losing party will pay costs but grant[ing] the court discretion to direct otherwise.").

[4] 28 U.S.C. § 1920 authorizes the following costs: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or part of a transcript necessarily obtained for use in the case; (3) fees for printing and witnesses; (4) fees for copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation for court-appointed experts and interpreters.

16

photocopying costs," she is required "'to provide the best break down obtainable from retained records.'" Loomis v. Exelon Corp., No. 06-CV-4900, 2010 WL 1005037, at *3 (N.D. Ill. Mar. 11, 2010) (*quoting* Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991)). In her reply, Ms. Houston submitted the affidavit of Michael DeBoni, who reports that photocopying logs kept by his law firm show that from August 9, 2005 to September 3, 2009, a total of 8,022 copies were made at a rate of $0.15 per page and posted to Ms. Houston's file.

Still, Ms. Houston provides no information about the types of documents copied; she hasn't identified the substance or purpose of copies made in a manner sufficient to demonstrate that those expenses were reasonable. *See* Bowling v. Hasbro, Inc., 582 F. Supp. 2d 192, 210 (D.R.I. 2008) ("While a page-by-page justification is not required, the prevailing party must offer some evidence of necessity."); Loomis v. Exelon Corp., 2010 WL 1005037, at *4 ("A party must provide details of copy costs claimed, such as the nature [of] each document copied and the number of pages in each document."); Vistein v. American Registry of Radiologic Technologists, No. 1:05-CV-2441, 2010 WL 918081, at *9 (N.D. Ohio Mar. 10, 2010) ("Counsel's affidavit is not a substitute for an itemized list of expenditures."). Ms. Houston says taxing costs for two copies is permissible, citing Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago, 38 F.3d 1429, 1441 (7th Cir. 1994), but she has provided no documentation to show how many copies of individual documents were made. While a party "may recover costs of copies

provided to the court and opposing counsel, it cannot recover costs for copies for its own use." Amerisure Ins. Co. v. Roll Serv., Inc., No. 01-C-5292, 2003 WL 21518549, at *2 (N.D. Ill. Jul. 1, 2003); *see also* Vistein v. American Registry of Radiologic Tech., 2010 WL 918081, at *8 ("Copying costs are generally limited to 'those costs incurred for copies of documents prepared for the court's consideration or for the opposing party.'" (*quoting* Pion v. Liberty Dairy Co., 922 F. Supp. 48, 53 (W.D. Mich. 1996))). The burden is on the party seeking reimbursement for photocopying costs to show that the copies were necessary for use in the case. Tirapelli v. Advanced Equities, Inc., 222 F. Supp. 2d 1081, 1086 (N.D. Ill. 2002). Ms. Houston hasn't described the purpose for which any copy was made.

The circumstances here are similar to those addressed in Rice v. Sunrise Express, Inc., 237 F. Supp. 2d 962 (N.D. Ind. 2002), in which the prevailing party, like Ms. Houston, sought recovery for photocopying expenses but provided no itemization to show what items were copied or for what purpose they were copied. The court agrees with and will adopt the approach taken by Judge Lee, who "reduce[d] the number of copies by 20% to account for the possibility that some copies were made for the convenience of counsel and the parties." 237 F. Supp. 2d at 981; *accord* Bowling v. Hasbro, Inc., 582 F. Supp. 2d 192, 210 (D.R.I. 2008) ("Because they provide no other evidence as to the necessity of the copies, their requested amount will be reduced by 50% in order to account for unnecessary copies."); Billings v. Cape Cod Child Dev. Program, Inc., 270 F. Supp. 2d 175, 178

18

n.3 (D.Mass. 2003) (denying request for copying expenses in its entirety because "defendants have failed to in any way itemize their copying costs"); Vistein v. American Registry of Radiologic Technologists, 2010 WL 918081, at *9 ("Because no determination can be made as to whether the copies were necessary for use in the case, the court . . . concludes that a reduction of 75% is reasonable."); Martinez v. Cui, No. 06-40029, 2009 WL 3298080, at *3 (D.Mass. Apr. 13, 2009) ("Seeking to strike a balance between the presumption in favor of cost recovery and the obligations of the prevailing party on a motion for costs, and following the prudence of other courts that have reduced undocumented photocopying costs, the court will award one-half of defendant's requested photocopying costs.").

Even recognizing that this litigation has been ongoing since 2005, Ms. Houston has provided insufficient support for her photocopying reimbursement request to enable the court to determine if the costs were reasonable and necessary. Her request for copying costs will be reduced by 20%, resulting in 6,418 pages copied at a rate of $0.15 per page, for a total of $962.70. An award of costs totaling $2,345.91 will be granted.

CONCLUSION

Based on the foregoing, the court

(1) DENIES the defendant's motion for renewed judgment as a matter of law [docket # 106];

(2) GRANTS IN PART and DENIES IN PART the plaintiff's motion for attorneys' fees [docket # 103] and awards her fees in the amount of $165,661.50, including $77,340.00 for Patrick O'Leary's services and $88,321.50 for the services of Yoder, Ainley, Ulmer & Buckingham, to be taxed against St. Joseph Regional Medical Center, Inc.; and

(3) GRANTS IN PART and DENIES IN PART the plaintiff's bill of costs [docket # 101] and awards her costs in the amount of $2,345.91.

SO ORDERED.

ENTERED:   June 22, 2010


                                         /s/ Robert L. Miller, Jr.
                                         Judge
                                         United States District Court